# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MCGINN, SMITH & CO., INC. *et al.*,

   Plaintiffs,

     v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY,

   Defendant.

Civil Action No. 11-825 (CKK)

**MEMORANDUM OPINION**
(May 15, 2011)

     This action was filed on May 2, 2011 by *pro se* Plaintiffs David L. Smith and Timothy M. McGinn for injunctive relief against Defendant Financial Industry Regulatory Authority ("FINRA").[1] Plaintiffs seek to compel FINRA to stay a disciplinary proceeding that is scheduled to begin on May 16, 2011 until the conclusion of a civil proceeding pending against Plaintiffs in the United States District Court for the Northern District of New York, *SEC v. McGinn, Smith & Co.*, No. 10-cv-457 (GLS) (DRH) (N.D.N.Y. filed Apr. 20, 2010). Although the disciplinary proceeding was scheduled to occur just two weeks after the Complaint was filed, Plaintiffs did not initially file this action with a request for a temporary restraining order or a preliminary injunction. On May 10, 2011, counsel for FINRA contacted the Court by telephone and

---

[1] The firm McGinn, Smith & Co., Inc. is also named as a plaintiff in this action, but it is not represented by counsel in this proceeding. Corporations, partnerships, and associations may not appear in federal court *pro se* and must act through licensed counsel. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993). Furthermore, the Court has received a letter from the receiver that has been appointed to manage the affairs of McGinn, Smith & Co., Inc. stating that he did consent to this lawsuit. Therefore, the Court shall only recognize David L. Smith and Timothy M. McGinn as proper plaintiffs in this action.

informed the Court that FINRA had received by mail a copy of a motion for temporary restraining order that Plaintiffs appeared to be filing with the Court. The Court informed counsel for FINRA that the Clerk of the Court had not yet received any motion for temporary restraining order ("TRO") filed by the Plaintiffs but requested that FINRA file an opposition to the motion by May 11, 2011, which they did. On May 12, 2011, the Clerk of the Court received and docketed Plaintiffs' motion. Plaintiffs filed a reply to FINRA's opposition on May 13, 2011. Accordingly, the parties have fully briefed Plaintiffs' motion for TRO and the issues presented are ripe for resolution.

For the reasons explained below, the Court finds that because Congress has vested judicial review of FINRA disciplinary proceedings exclusively with the Courts of Appeals, this Court lacks jurisdiction to hear Plaintiffs' request for a stay of the FINRA discplinary proceeding. Furthermore, the Court finds that transfer in lieu of dismissal is not in the interest of justice because Plaintiffs are not likely to succeed on the merits of their claim for injunctive relief and they have not demonstrated that they will suffer irreparable harm as a result of the FINRA disciplinary proceeding. Accordingly, the Court shall deny Plaintiffs' [8] Motion for Temporary Restraining Order and dismiss this action for lack of subject matter jurisdiction.

## I. BACKGROUND

The following facts are drawn from the allegations in Plaintiffs' Complaint as well as the exhibits attached to FINRA's opposition to Plaintiffs' request for a TRO. Because of the expedited briefing schedule, the parties have presented the Court with a limited record, and the Court's ruling is necessarily based on the limited record provided by the parties.

*A. Statutory and Regulatory Background*

Financial Industry Regulatory Authority, Inc. ("FINRA") is a private not-for-profit corporation and a self-regulatory organization that is registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to § 15A of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 73o-3. *Nat'l Ass'n of Sec. Dealers, Inc. v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005).[2]  "By virtue of its statutory authority, [FINRA] wears two institutional hats: it serves as a professional association, promoting the interests of its members, and it servers as a quasi-governmental agency, with express statutory authority to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act or . . . [SEC] regulations issued pursuant thereto." *Id.* (internal citations omitted); 15 U.S.C. § 78o-3(b)(7).  Disciplinary actions brought by FINRA's Department of Enforcement may be adjudicated before a FINRA Hearing Panel and appealed to the FINRA National Adjudicatory Council.  431 F.3d at 804.  FINRA must notify the SEC of any final disciplinary action taken against a member.  15 U.S.C. § 78s(d)(1).  The SEC may review FINRA's decision *de novo* pursuant to a petition from the aggrieved member; the SEC may also review the action *sua sponte*.  *Id.* § 78s(d)-(e); 431 F.3d at 804.  A person aggrieved by a final order of the SEC may obtain judicial review by filing a petition with the United States Court of Appeals for the District of Columbia Circuit or for the circuit in which he resides or has his principal place of business.  15 U.S.C. § 78y(a)(1).  This statutory system authorizing self-regulatory organizations to act as quasi-governmental agencies in disciplining

---

[2] Prior to 2007, FINRA was known by its prior name, National Association of Securities Dealers, Inc. ("NASD").

members for federal securities law violations has existed for over 70 years. *See Nat'l Ass'n of Sec. Dealers v. SEC*, 431 F.3d at 804.

B.   Factual Background

Plaintiffs David L. Smith and Timothy M. McGinn are part owners of McGinn, Smith & Co., Inc. (the "Firm"), which is based in Albany, New York and conducts a general securities business. *See* Compl., Ex. 1 (FINRA Dept. of Enforcement Complaint) ¶ 10. The Firm has been a member of FINRA since 1981, and Plaintiffs have each been registered with FINRA as general securities principals since November 25, 1980. *Id.* ¶¶ 10, 11 & 14. On April 5, 2010, FINRA's Department of Enforcement filed a complaint with the FINRA Office of Hearing Officers alleging that Plaintiffs and the Firm conducted four fraudulent unregistered securities offerings between September 2003 and November 2006. *See generally id.* Among other things, the complaint accused Plaintiff Smith of misusing funds for his own personal use, accused Smith and the Firm of making misrepresentations to investors, failing to establish and maintain a supervisory system to ensure compliance with applicable securities laws and regulations and FINRA rules, and accused Plaintiffs of providing FINRA with falsified documents. *Id.* The Department of Enforcement requested relief in the form of sanctions, including disgorgement of ill-gotten gains, and a finding that the Firm and Smith had willfully violated securities laws and regulations.

Because FINRA believed that Plaintiffs had violated securities laws and regulations, FINRA referred the matter to the SEC for further investigation. The SEC commenced its own formal investigation on January 5, 2010. *See* Def.'s Ex. 1 (Memorandum Decision and Order, *SEC v. McGinn, Smith & Co.* (N.D.N.Y. Jan. 5, 2011)) at 4. FINRA provided the SEC with

evidence from its investigation, which included testimony from Plaintiffs. *Id.* On April 20, 2010, the SEC filed a civil action against Plaintiffs and the Firm in the U.S. District Court for the Northern District of New York alleging that Plaintiffs had violated the antifraud provisions of the Exchange Act and other securities laws and regulations. The federal court appointed a receiver to take possession of the Firm and its related assets and entities and enjoined any person from taking actions that would interfere with the taking control, possession, or management of these assets. *See* Def.'s Ex. 3 (Order to Show Cause, Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief). On July 8, 2010, the hearing officer presiding over the FINRA enforcement action issued an order staying the proceeding against McGinn, Smith & Co. based on the federal court's order. *See* Def.'s Ex. 4 (Order Staying Proceeding Against McGinn, Smith & Co. and Directing Remaining Parties to File Proposed Hearing Schedule).

On July 28, 2010, the FINRA hearing officer issued a scheduling order setting the dates for the hearing as May 2-20, 2011. *See* Compl., Ex. 3 (Scheduling Order). On January 12, 2011, Plaintiffs' counsel withdrew from the FINRA proceeding. *See id.*, Ex. 4 (Amended Scheduling Order). The hearing officer issued an amended scheduling order on February 15, 2011, which set the hearing for May 16-26, 2011 in Albany, New York. *Id.*

On March 21, 2011, the FINRA hearing officer conducted a telephonic pre-hearing conference. *See* Compl., Ex. 6 (Order Denying Respondents' Oral Motion for Stay). Plaintiffs represented themselves during the conference and requested that the disciplinary proceeding be stayed until after the SEC action is concluded. *Id.* Plaintiffs informed the hearing officer that the SEC action was in the initial discovery phase, that 50 depositions would be scheduled between May and December 2011, that some depositions may conflict with the dates set for the FINRA

hearing, and that a trial date had been set in March 2012 for the SEC matter. *Id.* Plaintiffs argued to the hearing officer that they could not defend themselves in the disciplinary proceeding because they were unable to obtain the books and records of the Firm, which were now in the possession of the SEC and/or the appointed receiver. *Id.* Plaintiffs suggested that if a stay were granted, they would be willing to consent not to reenter the securities industry for the duration of the stay. *Id.* The FINRA Department of Enforcement opposed the stay, noting that the hearing dates had initially been set in July 2010. *Id.* It also represented that it had provided Plaintiffs with discovery consisting of approximately 30,000 pages of documents several months earlier and that it was incapable of providing Plaintiffs with access to documents in the possession of third parties. *Id.* The FINRA hearing officer denied Plaintiffs' request for a stay. In reaching his decision, the hearing officer cited the age of the case, the fact that the Department of Enforcement had provided extensive discovery materials, the uncertainty as to when the SEC case would conclude, the fact that lengthy delays increase the difficulty of reaching a fair resolution of the issues presented, and the importance to the parties and the investing public of reaching a fair and expeditious resolution of the case. *Id.*

As part of their defense in the SEC action, Plaintiffs contend that the testimony they gave to FINRA was compelled in violation of their Fifth Amendment rights against self-incrimination because FINRA was allegedly acting on behalf of the SEC in compelling their testimony. *See* Def.'s Ex. 1 at 4-5. To discover evidence supporting this defense, Plaintiffs served interrogatories on the SEC and subpoenas on FINRA and its employees seeking information relating to their investigations. *Id.* at 5. FINRA moved to quash the subpoenas, and the court granted FINRA's motion. The court held that Plaintiffs had failed to establish that FINRA was

acting on behalf of the SEC in conducting its own investigation and sharing evidence with the SEC. *See id.* at 15-17. FINRA had provided the court with declarations from officials who explicitly denied that FINRA took any action in its investigation at the request of the SEC. *See id.* at 15-16.

    C.    *Plaintiffs' Complaint and Motion for TRO*

In their Complaint in this action, Plaintiffs ask the Court to order that the FINRA disciplinary proceeding and hearing scheduled for May 16-26, 2011 in Albany, New York be stayed until the conclusion of the SEC action pending the Northern District of New York. Plaintiffs allege that "FINRA has repeatedly violated the Complainants [sic] civil rights as a result of an unconstitutional state action by FINRA acting as a proxy for the federal government (SEC)." Compl. at 1.[3] Plaintiffs generally allege that FINRA has been and continues to work in collusion with the SEC. Plaintiffs argue that the SEC did not conduct an independent investigation before filing its complaint and relied entirely on FINRA's investigation. *Id.* at 11. They claim that the only reason the FINRA hearing officer granted a stay with respect to the Firm and not with respect to Plaintiffs is because the SEC wants the disciplinary proceeding to go forward so that the SEC can gain advantage over Plaintiffs in the civil action. *Id.* at 1. Plaintiffs contend that the hearing should not go forward as scheduled because the hearing will disclose Plaintiffs' defenses, which Plaintiffs allege will then be used by the SEC to its advantage in the civil action. *Id.* at 2-3. Plaintiffs also contend that an adverse ruling would be used by the SEC

---

[3] Although Plaintiffs' Complaint does contain some numbered paragraphs, it also contains many unnumbered paragraphs and is not paginated. The Court shall refer to the first page after the table of contents as page one and sequentially number the following pages for ease of reference.

at trial. *Id.* at 3. Plaintiffs complain that they do not have access to all the documents and records they need to defend themselves in the FINRA proceeding. *Id.* Plaintiffs also argue that defending the SEC action requires their full attention and therefore they cannot mount an adequate defense in the FINRA hearing. *Id.* at 7.

Plaintiffs claim that they will be irreparably harmed if the FINRA proceeding is allowed to go forward because it will compromise their ability to defend the SEC action. Compl. at 12. Plaintiffs claim that they will "lose precious time that cannot be recovered if forced to devote that time to defending themselves in the FINRA action." *Id.* Plaintiffs also contend that the SEC will be able to use the transcript of the hearing to its advantage in the enforcement action. *Id.* In their motion for TRO, Plaintiffs essentially repeat the allegations in their Complaint.

## II. LEGAL STANDARD

"The standard for issuance of the 'extraordinary and drastic remedy' of a temporary restraining order or a preliminary injunction is very high, and by now very well established." *RCM Techs., Inc. v. Beacon Hill Staffing Grp., LLC*, 502 F. Supp. 2d 70, 72-73 (D.D.C. 2007) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunctive relief were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Hall v. Daschle*, 599 F. Supp. 2d 1, 6 n.2 (D.D.C. 2009) ("[t]he same standard applies to both temporary restraining orders and to preliminary injunctions"). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted.

*Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. "The four factors have typically been evaluated on a 'sliding scale.'" *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). Under this sliding scale, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

"It is particularly important for the [movant] to demonstrate a substantial likelihood of success on the merits." *Barton v. District of Columbia,* 131 F. Supp. 2d 236, 242 (D.D.C. 2001) (citing *Benten v. Kessler*, 505 U.S. 1084, 1085 (1992)). If the movant fails to do so, inquiry into the remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone. *See Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 614 (D.C. Cir. 1992) (affirming denial of preliminary injunction where the district court properly concluded that the plaintiff had "no likelihood of success on the merits"); *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001) ("although we apply a four-factor test in weighing a request for a preliminary injunction, such relief never will be granted unless a claimant can demonstrate 'a fair ground for litigation'"); *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("Given the inadequacy of [plaintiff]'s prospects for success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief."), *amended on other grounds on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995). In addition, the movant must establish that irreparable injury must be likely, "not just a possibility." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 375 (2008).

### III. DISCUSSION

In its opposition to Plaintiffs' motion for a TRO, FINRA argues that this Court lacks

subject matter jurisdiction to entertain Plaintiffs' Complaint because Congress has vested exclusive judicial review of FINRA's decisions in the Courts of Appeals.[4] Before it can reach the merits of Plaintiffs' request for a TRO, the Court must ensure that it has subject matter jurisdiction over this action.

### A. *Subject Matter Jurisdiction*

Plaintiffs' Complaint does not contain a short and plain statement of the grounds for the Court's jurisdiction as required by Federal Rule of Civil Procedure 8(a)(1), and Plaintiffs do not identify the source of this Court's jurisdiction in their TRO filings. Since Plaintiffs appear to be asserting a claim for violation of their constitutional rights, the Court would ordinarily have jurisdiction under the "federal question" statute, 28 U.S.C. § 1331. However, FINRA argues that because Congress established a statutory scheme vesting final review of FINRA disciplinary action in the Courts of Appeals, the district courts lack jurisdiction to review FINRA's actions.

FINRA's argument is based on the D.C. Circuit's decision in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). In that case, the court was asked to consider whether the district court had jurisdiction over a lawsuit seeking to compel the Federal Communications Commission to rule on certain matters that were pending before the agency on the ground that the FCC had unreasonably delayed making a ruling. By statute, judicial review of the FCC's final action was available only in the Court of Appeals.

---

[4] FINRA also argues that the Court should dismiss Plaintiffs' request for a stay based on the failure to exhaust administrative remedies. While that may provide an appropriate basis for dismissal in some circumstances, *see First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir. 1979), FINRA has not identified for the Court what administrative remedies were available to Plaintiffs to appeal the denial of their request for a stay. Accordingly, the Court cannot conclude based on the record before it whether exhaustion is a proper ground for dismissal.

10

After carefully considering the issue, the D.C. Circuit held that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Id.* at 75 (emphasis original). The court held that "[b]ecause the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction." *Id.* at 76.

Relying on *TRAC*, Judge Henry H. Kennedy has ruled that the district courts lack jurisdiction over complaints seeking to enjoin NASD disciplinary proceedings. *See Marchiano v. Nat'l Ass'n of Sec. Dealers, Inc.*, 134 F. Supp. 2d 90 (D.D.C. 2001). Judge Kennedy first concluded that based on the special review procedures in the Exchange Act, Congress had vested the Courts of Appeals with exclusive jurisdiction to review final NASD disciplinary rulings after they are reviewed by the SEC. *Id.* at 93. Judge Kennedy then concluded that the relief requested by the plaintiffs, i.e., a permanent injunction against enforcement, would prevent NASD from issuing a final order and therefore preclude review by the Court of Appeals. *Id.*

Plaintiffs argue that they are merely requesting a stay of the FINRA disciplinary proceeding pending the outcome of the SEC enforcement action in Northern District of New York, and therefore the relief they are requesting would not deprive the Court of Appeals of the opportunity to review FINRA's final order. However, Plaintiffs are effectively requesting an indefinite stay, as it is uncertain whether the SEC's enforcement action will conclude as scheduled in March 2012. Such a substantial delay could certainly be said to affect the future jurisdiction of the Court of Appeals. Furthermore, Plaintiffs' Complaint broadly alleges that

11

FINRA has acted and continues to act illegally as an agent for the SEC in pursuing discipline against them. Plaintiffs are effectively challenging the manner in which FINRA has decided to investigate and conduct disciplinary hearings against them. Such an attack almost certainly implicates issues that would be addressed by the Court of Appeals upon final review of FINRA's ruling. *See Ohio Edison Co. v. Zech*, 701 F. Supp. 4, 6 (D.D.C. 1988) ("[I]t is now well recognized that *TRAC* applies to cases in which there are allegations of bias within an agency or that the agency is improperly motivated."). Therefore, the exercise of jurisdiction by this Court would create potentially duplicative and conflicting review and frustrate the compelling policy considerations that favor the exclusive jurisdiction of the Courts of Appeals. *See TRAC*, 750 F.2d at 78. Moreover, the D.C. Circuit has recognized that "[s]tays of administrative action are properly sought in [the Court of Appeals] under a writ of mandamus, " *Cmty. Nutrition Inst. v. Young*, 773 F.2d 1356, 1362 (D.C. Cir. 1985) (citing *In re GTE Service Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985)), and "[t]he exclusive grant of jurisdiction to the Court of Appeals means that mandamus to obtain a stay also is available only in [the Court of Appeals]," *id.* (citing *TRAC*, 750 F.2d at 78-79).

Accordingly, the Court finds that the relief requested by Plaintiffs may affect the future jurisdiction of the Court of Appeals, and therefore the Court lacks subject matter jurisdiction under the rule in *TRAC*. Plaintiffs must request relief directly from the appropriate Court of Appeals.

### B.     *Dismissal or Transfer Under 28 U.S.C. § 1631*

When this Court finds that it lacks jurisdiction over an action, it "shall, if it is in the interest of justice, transfer . . . [the] action . . . to any other such court in which the action . . .

could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631. Accordingly, the Court must determine whether it is in the interest of justice to transfer this action to the appropriate Court of Appeals in lieu of dismissing it. Due to the emergency nature of the relief requested by Plaintiffs, the Court shall review the factors relevant for determining whether such relief is warranted. *See Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) ("[A] court is authorized to consider the consequences of a transfer by taking a 'peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed.") (citing *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999)). The most critical factors are likelihood of success on the merits and irreparable harm.

With respect to success on the merits, it appears that Plaintiffs will have difficulty establishing a meritorious claim that could justify the extraordinary relief they have requested. Indeed, the contours of Plaintiffs' claim are not entirely clear from the Complaint or from Plaintiffs' motion for TRO. Plaintiffs refer to "unconstitutional state action" by FINRA acting on behalf of the SEC, but they do not explain which of their constitutional rights FINRA is allegedly violating by denying their request for a stay. One possibility is that Plaintiffs are seeking to protect their Fifth Amendment rights against self-incrimination, but there is no indication that Plaintiffs will be compelled to testify as part of the FINRA hearing. Plaintiffs also might be relying on their Fifth Amendment rights to due process, but it is unclear what process Plaintiffs believe they are due. Regardless of which constitutional rights Plaintiffs claim are being violated, Plaintiffs cannot prevail unless they demonstrate that FINRA's actions are "fairly attributable" to the SEC. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Courts have repeatedly held that FINRA is a private entity and not a government functionary. *See D.L.*

13

*Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) (citing cases). The government "normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Plaintiffs have not alleged specific facts that demonstrate coercion or significant encouragement by the SEC with respect to FINRA's investigation of Plaintiffs. The fact that FINRA shared information with the SEC does not establish that FINRA was acting on its behalf. Furthermore, the court in the SEC action reviewed Plaintiffs' state action claim and determined that there was not enough evidence to support it, relying in part on declarations from FINRA officials who explicitly denied any collusion with or influence by the SEC. Therefore, it appears to the Court that Plaintiffs are highly unlikely to succeed on the merits of their claim.

With respect to the issue of irreparable harm, Plaintiffs' arguments are not much more appealing. Plaintiffs complain that the FINRA hearing will deprive them of necessary time to prepare their defense in the SEC action. But the FINRA hearing is scheduled to last only ten days in May 2011, and the trial of the SEC action is scheduled for March 2012; therefore, the FINRA hearing is not a significant enough distraction for Plaintiffs that it could amount to irreparable harm. Moreover, courts have uniformly recognized that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

Plaintiffs also argue that they will be prejudiced by disclosing their defenses during the FINRA hearing to their detriment in the SEC action. Neither Plaintiffs nor FINRA have

explained how the SEC might be able to use evidence from the FINRA hearing as part of the civil action, but the Court notes that Plaintiffs are not entirely without recourse, as the court overseeing that case has final say over what evidence may be used at trial. Furthermore, Plaintiffs indicate in their reply brief that the FINRA hearing officer has ruled that Plaintiffs are precluded from calling any witnesses or presenting any evidence in their defense due to their failure to timely disclose their witnesses and evidence. *See* Pls.' Reply at 5. Therefore, as a practical matter, there will be little that Plaintiffs could disclose during the FINRA hearing that would prejudice their defense of the civil action. Finally, the harm Plaintiffs are complaining about would be present whenever there are parallel FINRA and SEC proceedings, and therefore it is doubtful that this harm could ever be deemed irreparable for purposes of awarding injunctive relief. Accordingly, it appears to the Court that Plaintiffs do not have a compelling argument that they will be irreparably harmed without a stay of the FINRA hearing.

Based on its review of the most important factors relating to the award of emergency injunctive relief, the Court finds that it is not in the interest of justice to transfer Plaintiffs' action to a Court of Appeals for disposition. Therefore, the Court shall dismiss this action for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the relief requested by Plaintiffs in their Complaint and motion for TRO might affect the future jurisdiction of the Court of Appeals and therefore this Court lacks jurisdiction to grant the requested relief. Furthermore, the Court finds that transfer in lieu of dismissal is not in the interest of justice because Plaintiffs are not likely to succeed on the merits of their claim for injunctive relief and they have not demonstrated that they

15

will suffer irreparable harm as a result of the FINRA disciplinary proceeding.  Accordingly, the Court shall deny Plaintiffs' [8] Motion for Temporary Restraining Order and dismiss this action for lack of subject matter jurisdiction.  An appropriate Order accompanies this Memorandum Opinion.

                                          /s/
                                     COLLEEN KOLLAR-KOTELLY
                                     United States District Judge